CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 11, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| MSA Products, Corp., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:24-cv-00058 |
| | ) | |
| James Perry Hunsaker | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Brenda Hunsaker, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Defendants' motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (Dkt. 9 [hereinafter "Mot. to Dismiss"]). For the reasons outlined below, the court **denies** Defendants' motion to dismiss without prejudice but provides Defendants leave to refile.

### I.      Background

#### A. Factual History

MSA is a Virginia corporation based in Ruckersville, Virginia. (Compl. ¶ 4 (Dkt. 1).) MSA has used the trademarks "WELL HUNG" and "WELL HUNG VINEYARD" extensively on various goods and services since at least 2009, and specifically on processed nuts since at least 2011. (*Id.* ¶¶ 6, 19.) MSA owns various U.S. Trademark Registrations

relating to the WELL HUNG mark, including its use on wine, baseball caps, boxer shorts, t-shirts, sweatshirts, towels, and aprons.[1]  (*Id.* ¶¶ 7, 20.)

Defendants are residents of, and keep a business address based in, Arizona.  (*Id.* ¶ 5.) Defendants own a U.S. Trademark Registration for the "WELL HUNG" trademark for meat products, namely jerky.[2]  (*Id.* ¶ 9.)  Defendants have used the trademark for both jerky and clothing.  (*Id.* ¶ 22.)

On July 8, 2021, MSA filed an application to trademark "WELL HUNG VINEYARD" for processed nuts, coffee, and restaurant and bar services (the "Application").  (*Id.* ¶ 8.)  The United States Patent and Trademark Office ("USPTO") refused registration, finding that the "WELL HUNG VINEYARD" mark for processed nuts is confusingly similar to Defendants' "WELL HUNG" mark for meat products—namely jerky.  (*Id.* ¶¶ 9, 11.)  In response, MSA filed a "Petition for Cancellation" of Defendants' "WELL HUNG" mark (the "Petition").  (*Id.* ¶ 13.)

To resolve the dispute, the parties entered into settlement discussions.  (*Id.* ¶ 14.)  The parties agreed to a settlement wherein (i) Defendants would assign their "WELL HUNG" mark to MSA, (ii) MSA would give Defendants an exclusive license to use the "WELL HUNG" trademark for jerky, and (iii) MSA would give Defendants a non-exclusive license to use the "WELL HUNG" trademark for clothing, in connection with the form "WELL HUNG Meat [C]ompany or Meats Company."  (*Id.*)  After MSA sent the Settlement

---

[1] MSA owns the following four U.S. Trademark Registrations: 3,755,003; 3,911,608; 3,981,455; and 3,981,443.  (Compl. ¶ 7.)
[2] Defendants own the following U.S. Trademark Registration: 5,800,160.  (Compl. ¶ 9.)

Agreement to Defendants, Defendants obtained new counsel and reneged on the settlement. (*Id.* ¶¶ 16–17.)

### B. Procedural History

MSA brought this lawsuit against Defendants on July 31, 2024, in the U.S. District Court for the Western District of Virginia. (*See* Compl.) The complaint includes five counts. Count I alleges that Defendants have infringed on MSA's trademark in violation of 15 U.S.C. § 1114(1). (*Id.* ¶¶ 30–36.) Count II alleges that Defendants have "engaged in acts constituting unfair competition, false designation of origin and false representation or advertising" in violation of 15 U.S.C. § 1125(a). (*Id.* ¶¶ 37–41.) Count III alleges that Defendants have engaged in acts constituting trademark infringement under Virginia common law. (*Id.* ¶¶ 42–44.) Count IV alleges that Defendants have engaged in acts constituting unfair competition under Virginia common law. (*Id.* ¶¶ 45–47.) Count V alleges, in the alternative to the other counts, that Defendants entered into an enforceable settlement agreement and requests the court enforce the agreement. (*Id.* ¶¶ 48–52.)

On December 3, 2024, Defendants moved under Rule 12(b)(2) to dismiss the complaint for lack of personal jurisdiction, (Dkt. 9), and filed a memorandum in support, (Dkt. 9-1 [hereinafter "Defs.' Mem. in Supp."].) The memorandum argues that the court lacks personal jurisdiction in the form of specific or general jurisdiction over Defendants. (*Id.* at 4–7.) Additionally, the memorandum argues that, even if there were a basis for jurisdiction, exercising jurisdiction over Defendants would be unreasonable. (*Id.* at 7–8.)

MSA opposes the motion, arguing that its complaint alleges facts sufficient for the court to exercise specific jurisdiction over Defendants. (*See* Pl.'s Opp'n to Defs.' Rule 12(b)(2)

Mot. to Dismiss (Dkt. 11) [hereinafter "Pl.'s Opp'n."].) Specifically, MSA claims that Paragraphs 2 and 3 in its complaint allege that Defendants have committed acts of trademark infringement in Virginia, activity that gave rise to the present action. (*Id.* at 2.) In its opposition, MSA notes that Defendants chose not to submit any evidence on the issue of personal jurisdiction. (*Id.* at 3.) Additionally, MSA anticipated the possibility that Defendants might submit evidence to support their motion in their reply. In a footnote, MSA requested leave to conduct limited jurisdictional discovery if Defendants submitted evidence, or if the court wished to conduct an evidentiary hearing. (*Id.* at 10 n.1.)

Replying to MSA's opposition, Defendants did in fact submit additional evidence in the form of two declarations, one from each defendant. (*See* Reply Mem. in Supp. of Defs.' Rule 12(b)(2) Mot. to Dismiss at 2 (Dkt. 12) [hereinafter "Defs.' Reply"].) The declarations assert that Defendants have never been to Virginia, never directed business, sales activities, marketing, or advertising towards Virginia, and have never had any business interests, employees, contractors, or property in Virginia. (*Id.*; *see* Defs.' Reply Ex. 1 (Dkt. 12-1) (Decl. of Brenda Hunsaker); Defs.' Reply Ex. 2 (Dkt. 12-2) (Decl. of James Perry Hunsaker).)

Following that reply, MSA filed a motion for leave to file a sur-reply brief in response to Defendants' Rule 12(b)(2) reply brief. (Dkt. 13 [hereinafter "Mot. for Leave"].) MSA requests it be allowed to file a sur-reply brief due to Defendants' new evidence included in their reply brief. (*Id.* at 1.) As part of that sur-reply, MSA submitted a letter written by Defendants' counsel, which states in part that "Well Hung Meat CO. [sic] has not ventured significantly into the smaller towns in the western part of the Commonwealth of Virginia." (Mot. for Leave Ex. 1 at 6 (Dkt. 13-1).) MSA claims this sentence admits that Defendants

have conducted business in Virginia (although, not "significant" business). (Mot. for Leave at 2–3.) Defendants did not respond to MSA's motion. On February 18, 2025, the court granted MSA's motion for leave to file a sur-reply brief. (*See* Dkt. 16.)

On February 21, 2025, MSA filed a sur-reply brief in opposition to Defendants' motion to dismiss. (MSA's Surreply in Opp'n to Defs.' Rule 12(b)(2) Mot. to Dismiss (Dkt. 17) [hereinafter "MSA Sur-Reply"].) In addition to reiterating points from its prior briefing, MSA accuses Defendants of refusing to provide discovery concerning their sales in Virginia. (*Id.* at 3.) As support, MSA attaches a copy of a limited discovery request it sent to Defendants, (MSA Sur-Reply Ex. 1 (Dkt. 17-1), and Defendants' responses, (MSA Sur-Reply Ex. 2 (Dkt. 17-2). For their part, Defendants claimed that MSA's "discovery requests" were "premature, out of order, not sanctioned or permitted by the Court under Rule 26(d)(1) or otherwise, and precede the required 26(f) conference." (*Id.* at 2.) They claim that "[a]ll such requests are therefore improper and require no response." (*Id.*)

## II.    Standard of Review

Rule 12(b)(2) provides that a defendant may file a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Whether personal jurisdiction may be exercised is a question "for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993).

When a district court decides a pretrial Rule 12(b)(2) motion without conducting an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.

2003); *see Combs*, 886 F.2d at 676. In deciding whether the plaintiff has made a *prima facie* showing, the court takes "all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc.*, 334 F.3d at 396. When assessing whether a *prima facie* case has been made, the court must determine "whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). The court "may also consider affidavits submitted by both parties" in so doing, "although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* At the same time, however, the court need not "credit conclusory allegations or draw farfetched inferences." *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320 (Table), 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (quoting *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)).

### III.    Analysis

The federal rules provide that a district court must first look to state law to determine if personal jurisdiction exists over a defendant. Specifically, Federal Rule of Civil Procedure 4(k)(1)(A) provides that the service of "a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). In addition to asking if exercising jurisdiction is authorized by the relevant state long-arm statute, courts must also ask if the "application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). In Virginia, the state's "long-arm statute extends personal

jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350–51 (4th Cir. 2020). As a result, the statutory and constitutional questions collapse into a single inquiry: "whether the defendant has sufficient 'minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation omitted).

In determining whether the court can exercise personal jurisdiction, courts primarily focus on "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). That focus has led to the recognition of "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction exists "only when a defendant is 'essentially at home' in the State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S 915, 919 (2011)). As the name suggests, general jurisdiction permits courts to exercise personal jurisdiction over the defendant for "any and all claims" brought against him, whether or not they "relate to the forum State or the defendant's activity there." *Id.* By contrast, specific jurisdiction exists when the defendant takes some action to "purposefully avail[] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Specific jurisdiction is much narrower than general jurisdiction, and only exists over certain claims that "aris[e] out of or relat[e] to the defendant's contacts" with the State. *Bristol-Myers Squibb Co.*, 582 U.S. at 262.

Defendants argue that MSA's complaint does not allege enough facts to allow the court to exercise personal jurisdiction over Defendants in this case, either as a matter of general or specific jurisdiction. (Dkt. 9-1 at 1.) Additionally, Defendants argue that their submitted declarations confirm that the court lacks specific jurisdiction here. (*See* Dkt. 13 at 2.)

## A. General Jurisdiction

Defendants argue that the court cannot exercise general jurisdiction in this case because Defendants are not "at home" in Virginia and are instead subject to general jurisdiction in Arizona. (Defs.' Mem. in Supp. at 6–7.) While Defendants' memorandum correctly outlines the standard for general jurisdiction for foreign *corporate* defendants, this case involves individual, *non-corporate*, defendants. (*See* Compl. ¶ 5 ("James Perry Hunsaker and Brenda Hunsaker . . . are citizens of the United States and residents of Arizona with a business address at PO Box 490, Higley, Arizona 85236.").) However, the standard is quite similar. The Supreme Court has repeatedly stated that

> For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State. But only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in that State.

*Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)) (internal quotation marks and citations omitted).

The complaint in this case contains no allegations to support Defendants' domiciliary status in Virginia. In fact, the complaint only contains facts that support domiciliary status in Arizona. (*See* Compl. ¶ 5.) In its response in opposition, MSA offers no argument suggesting

- 8 -

that the court can exercise general jurisdiction over Defendants.  As a result, the court finds it has no basis to exercise general jurisdiction over Defendants.

## B. Specific Jurisdiction

Defendants also argue that the court cannot exercise specific jurisdiction over them. (Defs.' Mem. in Supp. at 4–6.)  Defendants first claim that MSA fails to make a *prima facie* showing because it does not allege "any act in Virginia taken by the Defendants that might be said to give rise to the Plaintiff's claims."  (*Id.* at 6.)

MSA disagrees, claiming that it "expressly alleges that the Hunsakers committed acts of trademark infringement of MSA's WELL HUNG Marks in Virginia, and that these acts of infringement gave rise to the present action."  (Pl.'s Opp'n at 6 (emphasis omitted).)  MSA points to its complaint, where it alleges that the "defendants have *done business in the Commonwealth of Virginia* and acts of defendants' trademark infringement and unfair competition have *occurred in this Commonwealth.*"  (Compl. ¶ 2 (emphasis added).)  In addition, MSA alleges that "a substantial part of the events or omissions giving rise to the claims *occurred in* and a substantial part of the property that is the subject of the action is situated in *this judicial district.*"  (*Id.* ¶ 3 (emphasis added).)

In analyzing specific jurisdiction, the court will consider allegations in the complaint, the declarations submitted by Defendants, and the letter submitted by MSA.  In determining specific jurisdiction, the Fourth Circuit instructs the court to assess "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'"  *ALS*

*Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). "The first two factors correspond with the 'minimum contacts' prong" of *International Shoe*, while "the third factor corresponds with the 'fair play and substantial justice' prong." *Mya Saray, LLC v. Dabes*, No. 3:17CV00016, 2018 WL 1161145, at *3 (W.D. Va. Mar. 5, 2018) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

The first factor outlines the "minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp.*, 561 F.3d at 278. While MSA is correct that the analysis is "flexible" and should be conducted "case-by-case," (Pl.'s Opp'n at 6 (citation omitted)), the courts normally utilize "various nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment." *Consulting Eng'rs Corp.*, 561 F.3d at 278. In the business context, these factors include, but are not limited to:

> • whether the defendant maintains offices or agents in the forum state;
> • whether the defendant owns property in the forum state;
> • whether the defendant reached into the forum state to solicit or initiate business;
> • whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
> • whether the parties contractually agreed that the law of the forum state would govern disputes;
> • whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
> • the nature, quality and extent of the parties' communications about the business being transacted; and
> • whether the performance of contractual duties was to occur within the forum.

*Id.* (citations omitted).

Interestingly, MSA asserts that "Fourth Circuit precedent establishes that even a single act of trademark infringement gives rise to this Court's specific jurisdiction over Defendants."

(Pl.'s Opp'n at 5; *see also* Mot. for Leave at 3 ("[A] single sale of infringing goods in this Commonwealth is sufficient for specific jurisdiction.").)  While MSA is correct that a single contact *may* support specific personal jurisdiction, the court disagrees that its urged brightline rule exists in all trademark cases.  MSA relies on *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390 (4th Cir. 2003), but that case simply notes the general and uncontroversial principle that "[e]ven a single contact *may* be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of fair play and substantial justice is not thereby offended."  *Id.* at 397 (internal quotation marks and citation omitted) (emphasis added).  A single contact may do so when it "creates a 'substantial connection' with the forum."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985).  On the other hand, a single contact or act may not be sufficient "if 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum."  *Id.* (quoting *International Shoe Co.*, 326 U.S. at 318).  Thus, courts are instructed to analyze the quality and nature of the contact with the jurisdiction, not simply the presence of a single act or transaction.[3]  MSA's suggestion of a brightline rule ignores the fact that "[t]here is no clear formula for determining what constitutes 'purposeful availment.'"  *Reynolds Foil Inc. v. Pai*, No. 3:09CV657, 2010 WL 1225620, at *2 (E.D. Va. Mar. 25, 2010).

The analysis does not end there, however, because the court has broad discretion to "compel or permit discovery to aid in its resolution of personal jurisdiction issues raised in a

---

[3] MSA cites other cases supporting the fact that a single act may be sufficient to support the court's exercise of specific personal jurisdiction over a defendant.  (*See* Pl.'s Opp'n at 7 (citing *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 495–97 (W.D. Va. 2019), and *Eplus Tech., Inc. v. Aboud*, 313 F.3d 166, 177 (4th Cir. 2002)).)  Neither case supports the notion that Defendants have purposely availed themselves in Virginia based on the allegations in the complaint, however.  Instead, both cases simply demonstrate the courts must assess the *quality* of the contacts with the forum state, not just the presence or absence of a single contact.

defendant's motion to dismiss." *Informaxion Sols., Inc. v. Vantus Grp.*, 130 F. Supp. 3d 994, 997 (D.S.C. 2015); *see Mylan Labs., Inc.*, 2 F.3d at 64.  Once jurisdictional discovery is completed, "the plaintiff's preponderance of the evidence burden applies and the plaintiff no longer has the benefit of favorable interpretations of pleading allegations." *Est. of Thompson v. Mission Essential Pers., LLC*, No. 1:11CV547, 2014 WL 4745947, at *2 (M.D.N.C. Sept. 23, 2014).

The court concludes that jurisdictional discovery is warranted and would aid the court in determining whether specific personal jurisdiction exists over Defendants.  The critical question of whether Defendants have sold allegedly infringing products in Virginia can be easily clarified through limited discovery.  MSA's assertion of personal jurisdiction "is not plainly frivolous, and since additional evidence would facilitate a more informed decision," the court will use its "considerable procedural leeway" to "permit discovery in aid of the motion." *Mya Saray, LLC*, 2018 WL 1161145, at *4–5.

Accordingly, MSA and Defendants are to immediately confer regarding the scope of such discovery, which shall be completed within thirty (30) days of the date of the accompanying Order.  Such discovery shall be limited to the theories of specific personal jurisdiction relied upon in MSA's response brief (Dkt. 11).  Within fourteen (14) days following the completion of the jurisdictional discovery, Defendants may supplement, revise, and refile their motion to dismiss if they believe personal jurisdiction is still in dispute.

## IV.    Conclusion

For the reasons discussed above, the court will **deny** Defendants' motion to dismiss (Dkt. 9) for lack of jurisdiction without prejudice.  Following the completion of the limited

jurisdictional discovery outlined above, Defendants shall have fourteen (14) days in which to renew their jurisdictional challenge under Rule 12(b)(2).

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this 11th day of April, 2025.

_Jasmine H. Yoon_

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE